STATE OF MISSOURI *ex rel.* G. BARRICELLI *et al.,* Respondent, v. E. A. NOONAN, Mayor of the City of St. Louis, Appellant.

St. Louis Court of Appeals, November 20, 1894.

1. **Mayor of City:** FUNCTION OF JUDICIARY. The immunity from judicial control appertaining to the office of governor of the state, or to the presidency of the United States, does not attach to the mayoralty of a city.

2. ——: ——: MANDAMUS. *Mandamus* is a proper remedy to compel the mayor of a city to revoke permits issued by him in violation of a municipal ordinance; and the remedy may be invoked by people of the city having no special interest in the premises.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*W. C. Marshall* for appellant.

*R. B. Haughton* for respondent.

BIGGS, J.—The defendant, as mayor of the city of St. Louis, issued permits to hawkers to sell their goods within certain limits of the city, and within all hours of the day. This was in direct violation of ordinance number 14,084 of the city. On the petition of the relators, who are residents of the city, the circuit court granted an alternative writ of *mandamus* against the defendant, requiring him to show cause why a peremptory writ should not issue to compel him to recall and cancel such permits. The defendant demurred to the writ, on the ground that the relators had shown no right in themselves to maintain the action; that the petition stated no cause of action; and that the court had no right to issue the writ against the defendant. The court overruled the demurrer, and issued the peremptory writ, the defendant having refused to file any other pleading.

It appears from the alternative writ that the municipal assembly of the city has power by ordinance to regulate, license, tax or suppress peddlers and hawkers; that by said ordinance, number 14,084, hawkers are prohibited from selling, or offering their wares or merchandise for sale, within certain prescribed limits in the city between the hours of 8 o'clock A. M. and 6 o'clock P. M., and for a violation of the ordinance a fine of $10 is imposed; that the defendant, as mayor of the city, had granted to various persons written permits, **purporting**

to give them authority to occupy certain named places in the streets of the city, within the prohibited district, for the purpose of selling fruit and merchandise at any and all hours of the day; and that the parties were then engaged in selling under these permits; that to one person the defendant had issued three permits; to another one hundred, and that a third had sold his permit for $50. The petition and writ contain the further statement, that the relators had called the attention of the police commissioners and the city attorney to these violations of the city ordinance, but that, in consequence of the action of the defendant in issuing the permits, these officers were deterred and prevented from prosecuting the offenders.

It is the law of this state that the governor is not subject to the control of the judiciary in the performance of any of his official duties, whether they be ministerial or political. He is the head or chief executive of one of the coordinate branches of the state government, and as such he can not be required to answer to another branch as to the performance or nonperformance of any of the duties imposed on him by the constitution, and laws of his state. *State ex rel. Robb v. Stone*, 25 S. W. Rep. 376. The same rule applies to the president of the United States, and the reason for this rule is founded on our peculiar system of government, both state and national. The defendant insists that on the same principle, he, as mayor of the city of St. Louis, is also exempt. We can not agree to this, and we have been unable to find a case that maintains such a proposition.

Exemption has been confined to the president of the United States, or his confidential agents who merely execute his will, and to the governors of the several states. The heads of the different departments of both the federal and state governments have been

compelled, by *mandamus*, to perform duties which were purely ministerial. So have county and municipal officers. In the case of *State ex rel. v. Ames*, 31 Minn. 440, a claim held by the relator against the city had been properly audited, and an appropriation for its payment regularly made. The mayor of the city refused to sign a warrant for the money, and the court by *mandamus* compelled him to do so.

In the case of *State ex rel v. Ricord*, 35 N. J. L. 396, the defendant, as mayor of the city, refused to sign a contract between the relator and the city, which had been made in pursuance of the charter and ordinance of the city. The court compelled him to do so.

In the case of *People ex rel. v. Opdyke*, 40 Barb. 306, the supervisors had legally drawn a warrant to pay laborers for a public work, and the defendant as mayor of the city of New York refused to countersign the warrant. The court issued a peremptory writ of *mandamus* compelling him to perform his duty.

In the case of *Duncan v. Mayor of City of Louisville*, 8 Bush, 98, the city passed an ordinance directing its mayor to procure the condemnation of land belonging to appellants, and the ordinance authorized the mayor to pay for the land in city bonds. The mayor refused to sign the bonds, and the appellants sought by *mandamus* to compel him to do so. The supreme court said: "The true ground of complaint in this case is that an officer of the municipal corporation of the city of Louisville has undertaken to set at naught the corporate will. Clearly the corporation must have some remedy to compel its officers to obey and execute its municipal laws. There is no adequate remedy for such a grievance other than a *mandamus*. As the city could have sued out the writ, there can be no valid objection to the parties beneficially interested in enforcing the corporate will (expressed both

by ordinance and the judgment of a court of competent jurisdiction, rendered at the instance of the city) being allowed to avail themselves of the same remedies that the corporation would have the right to use; and the assent of the city to this proceeding must be presumed from the fact that it nowhere appears in the record that it has authorized the officer to be defended on its behalf.''

To the same effect is the case of *People v. Brennan*, 39 Barb. 536, where the mayor of the city of New York was compelled by *mandamus* to sign city bonds which had been previously authorized to be issued in payment of certain real estate which had been purchased by the city.

We have referred to the foregoing cases from other states for the purpose of showing that, in cases where the remedy by *mandamus* is permissible, the courts have not hesitated to enforce it against the chief executive officers of cities.

The remaining question is whether the remedy by *mandamus* is appropriate in the case at bar. The defendant, whose duty it is to see that the police commissioners and their subordinates enforce the laws of the city, has himself practically set aside one of its ordinances. The permits were tantamount to declarations that the defendant, as the chief executive of the city, would remit any fine imposed against any person for a violation of the ordinance, who held one of his permits. The reasonable effect of this was to deter the subordinate officers of the city, upon whom the active duty of enforcing the ordinances was imposed, from prosecuting such offenders. It is true, as argued by the defendant's counsel, that the permits are invalid and would afford no protection to the holders against prosecutions; yet their effect would be that claimed in the petition. Clearly the people of the city ought in

such a case as this have some remedy.    It seems to us that *mandamus* is the only effective and speedy remedy, and that the judgment of the circuit court in awarding the peremptory writ was wholly justified by the facts.

It will not do to say that the circuit court by its judgment interfered with the discretion of the defendant in the remission of fines.    The authority of the mayor to remit a fine can only be exercised after the fine has been imposed.    The language of the charter is: "He (the mayor) shall take care that the laws of the state and the ordinances of the city are respected and enforced within the city, and may remit fines, costs, forfeitures and penalties *duly imposed* for violation of any ordinance, and shall make a report of the same to the assembly at every session thereof."    Sec. 16, of art. 4.    The case of *State ex rel. v. Francis*, 95 Mo. 44, is authority for this conclusion.    There the respondents, as police commissioners for the city of St. Louis, had instructed the chief of police and his subordinate officers not to prosecute dramshop keepers for selling wine, beer and whisky on Sunday.    The supreme court by its writ of *mandamus* compelled the respondents to revoke that order.    In disposing of the question the court said: "And it does not follow, because the respondents have some margin of discretion in the performance of their duty in respect to all laws relating to the observance of Sunday, that, therefore, they are at liberty to refuse to take any action in the premises, and to *foreclose* themselves or their subordinates from the performance of an obvious duty, as was attempted in the order aforesaid.    In so far as that particular order is concerned, the relators are entitled to the remedy they seek."    If there is any material distinction in principal between that case and this, we have been unable to perceive it.

Jennings v. St. L., I. M. & S. R'y Co.

In the *Francis case*, like in this, the relators were private citizens. The court held that, when the object of the proceeding was to enforce a public duty, the people are regarded as the real party, and the relators need not show that they had any special interest in the result. This disposes of the other ground of demurrer.

There is a motion to dismiss the appeal, upon the ground that, after the appeal, the defendant performed the judgment by canceling the permits. We have not considered the motion, for the reason that the parties are desirous of having the case disposed of on its merits.

The judgment of the circuit court will be affirmed. Judge ROMBAUER concurs in this opinion. Judge BOND concurs in the result, on the ground that the judgment of the circuit court has been performed by the defendant.